UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

DEMOND ISACC PURVIS                          CIVIL ACTION NO. 3:25-1764

                                             SECTION P

VS.

                                             JUDGE TERRY A. DOUGHTY

WILLIAM BENNETT, ET AL.                       MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT AND RECOMMENDATION

Plaintiff Demond Isacc Purvis, a prisoner at Caldwell Correctional Center ("CCC") proceeding pro se and in forma pauperis, filed this proceeding on approximately September 3, 2025, under 42 U.S.C. § 1983. He names the following Defendants: Sheriff William Bennett, Warden Kevin Wyles, Deputy Warden Callender, and Major Frederick.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

## Background

Plaintiff claims that when he arrived at CCC, he asked "to see mental health" but a nurse told him that the facility does not "have mental health on staff." [doc. # 9, p. 3]. Plaintiff states that he needs to see a licensed mental health doctor. *Id.* When he was incarcerated at Madison Correctional, he saw a mental health doctor once each month. *Id.*

Plaintiff alleges that his mental health medications were changed. [doc. # 9, p. 3].

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

Plaintiff names Sheriff Bennett as a Defendant because Bennett is "overseer of [CCC] and everyone reports to him." [doc. # 19, p. 1]. Plaintiff argues that it is Bennett's "job to ensure the safety of inmates and staff members . . . ." *Id.* He also appears to fault Bennett for the lack of a psychiatrist or other mental health staff at CCC. *Id.*

Plaintiff claims that Warden Kevin Wyles is responsible for ensuring the safety of staff and inmates at CCC. [doc. # 19, p. 1]. He suggestively claims that Wyles is also at fault for the lack of mental health staff at CCC. *Id.*

Plaintiff claims that Assistant Warden Callender said he would transfer Plaintiff to another facility to receive healthcare, but to date Plaintiff remains at CCC. [doc. # 19, pp. 1-2].

Plaintiff claims that Defendants Bennett, Wyles, and Callender failed to allow him to see a licensed psychiatrist once each month. [doc. # 19, p. 2].

For relief, Plaintiff seeks: (i) a transfer to another facility; (ii) to enjoin CCC to hire a licensed psychiatrist and social worker; and (iii) compensation. [doc. #s 9, p. 4; 19, pp. 2-3].

## **Law and Analysis**

### **1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b)

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the

3

same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Transfer**

Plaintiff asks the Court to transfer him to a different facility. A prisoner, however, has no

4

constitutional right to be housed in any particular facility or transferred from one facility to another, even if conditions and amenities in one may be preferable to another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Fuselier v. Mancuso*, 354 F. App'x 49, 2009 WL 3780729, at *1 (5th Cir. Nov. 12, 2009). "The Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("[T]he State may confine [a prisoner] and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.").

Moreover, in Louisiana, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The secretary of the department may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training, and security needs established by the department." LA. REV. STAT. § 15:824(A).

Here, as Plaintiff has no federal constitutional right to be transferred to, or confined in, a place of his choosing, and because Plaintiff's placement lies solely in the purview of the Department of Public Safety and Corrections, the Court should dismiss his request for a transfer.

**3. Major Frederick**

Plaintiff names Major Frederick as a Defendant, but he does not set forth any allegations against Frederick. A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S.

5

at 662.  Here, the Court should dismiss Major Frederick because Plaintiff does not raise a claim against him.

**4. Compensation**

Plaintiff claims that the remaining Defendants denied him medical care for his mental health.

For relief, Plaintiff seeks compensatory/monetary relief.  42 U.S.C. § 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."

Here, Plaintiff does not allege that because any Defendant denied care for his mental health, he suffered a physical injury.  Plaintiff may not recover compensatory damages for his mental or emotional injuries.  See *Edler v. Hockley Cty. Comm'rs Court*, 589 F. App'x 664, 670 (5th Cir. 2014) (finding that the district court "properly dismissed [the plaintiff's] claims of inadequate psychological care because . . . he did not suffer physical injury.").[3]  The Court should deny this request for relief.

---

[3] *See also Powell v. Washington*, 720 F. App'x 222, 229 (6th Cir. 2017) ("Powell claims that the defendants were deliberately indifferent to his psychiatric or psychological needs by continuing to confine him in administrative segregation despite his complaints that it was causing his mental health to deteriorate.  Powell has not alleged that he sustained a physical injury that resulted from his confinement in administrative segregation; therefore, he cannot recover damages for any psychological injury he allegedly suffered from his detention.").

**5. Americans with Disabilities Act**

In his amended pleading, Plaintiff claims (in total) that Sheriff Bennett violated the Americans with Disabilities Act by failing to provide mental health care for him.  [doc. # 19, p. 1].

Plaintiff's claim, however, is impermissibly conclusory.  He does not supply enough facts to state a plausible claim.  Even assuming he has a qualifying disability under the Act, his claim fails because he does not allege that any Defendant discriminated against him due to his disability.  *See Hay v. Thaler*, 470 F. App'x 411, 418 (5th Cir. 2012) (ADA and RA claims require a showing of discrimination "by reason of [the plaintiff's] disability"); *Reed v. Nacogdoches Cnty.*, No. 22-40126, 2023 WL 3563017, at *6 (5th Cir. May 19, 2023) ("Assuming for the sake of discussion that Reed has a qualifying disability under the ADA and the RA, his claims nonetheless fail because he has offered no evidence that the jail discriminated against him *because of* his disabilities.").  The Court should dismiss this claim.

**6. Medical Care**

A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'"  *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)).  A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim).  A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would

7

clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

### A. Deputy Warden Callender

Construing Plaintiff's allegations liberally and in his favor, Plaintiff plausibly alleges that he has a serious medical need for mental health care: he suffers from PTDS, depression, nightmares and sleep apnea, and he physicians previously treated him for mental health needs and proscribed Wellbutrin. [doc. #s 1, p. 4; 9, p. 3; 19, pp. 1-2]. And he plausibly alleges that Deputy Warden Callender knew Plaintiff was (and is) exposed to a substantial risk of harm: Plaintiff told Callender about his "mental issues," and Callender acknowledged that Plaintiff had a "righteous point" about requiring care. [doc. # 19, pp. 1-2]. In addition, Plaintiff plausibly alleges that Callender responded to Plaintiff's requests with deliberate indifference: despite

8

informing Plaintiff that he would transfer Plaintiff to a facility which offers mental health care eight months ago, to date Callender has not transferred Plaintiff or arranged alternative care.[4]  *Id.*

Plaintiff, however, does not state a claim *on which relief may be granted* because he does not seek cognizable relief against Callender.  He asks this Court to order "Caldwell Correctional Center [to] change how the mental health system is run by putting a licensed psychiatrist and social worker on staff[.]"  [doc. # 19, p. 2].  He also states that if CCC does not hire a psychiatrist or social worker, he wants the Court to disallow CCC "to house prisoners with mental health issues . . . ."  *Id.*  Plainly, he does not seek any relief against Callender.  The Court should, accordingly, dismiss this claim.

**B. Sheriff Bennett and Warden Wyles**

In short, Plaintiff suggestively claims that Bennett and Wyles failed to adopt a policy of maintaining a psychiatrist or other mental health professional on staff to treat inmates for mental health needs.

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries."  *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).  "Vicarious liability does not apply to § 1983 claims."  *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994).  "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'"  *Brown v.*

---

[4] While Plaintiff has seen a nurse, he suggests that he did not receive any treatment from the nurse because mental health assistance is unavailable at the facility.

*Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Plaintiff does not allege that Bennett or Wyles affirmatively participated in any of the above acts or omissions or that there was a sufficient causal connection between the defendants' conduct and any alleged constitutional violation.[5]  At best, he alleges in his initial pleading that he "wrote filed to the wardens no responded [sic]."[6]  He does not, however, identify what he wrote or allege that either defendant ever received or viewed his filings.  Consequently, he does not plausibly allege that either defendant *knew of* a substantial risk of serious harm.[7]  *See Ball v. LeBlanc*, 792 F.3d 584, 595 (5th Cir. 2015) ("[A] prison administrator who has received an administrative remedy request is not necessarily made aware, without factual corroboration, that there is a substantial risk of serious harm."); *Ornelas v. Hamilton*, 2021 WL 4618465, at *2 (5th Cir. Oct. 6, 2021) (finding that a defendant was not aware of an excessive risk to the plaintiff where the plaintiff alleged that he sent letters to the defendant reporting abuse and asking for help because there was no allegation that the defendant saw or received the letters).

---

[5] *See Dedrick v. Richards*, 47 F.3d 425 (5th Cir. 1995) ("An official who is sued in her individual capacity cannot be liable under § 1983 on the theory of *respondeat superior;* to be liable she must have been personally involved in the plaintiff's injury."); *Salcido v. Univ. of S. Mississippi*, 557 F. App'x 289, 292 (5th Cir. 2014) ("To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must show that they were either personally involved in the constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation.").

[6] He does not mention these particular allegations again in either of his two succeeding pleadings.

[7] The undersigned previously instructed Plaintiff to, among other things: "explain *when* he requested assistance from a defendant(s); explain *what* he told a defendant(s) or what he requested; explain *why* he requested medical care (in other words, what were Plaintiff's medical needs/symptoms when he requested care?); and explain *how* a defendant(s) was deliberately indifferent to a substantial risk of serious medical harm to him."  [doc. # 18].

Instead, Plaintiff essentially pleads only vicarious liability.  For instance, he emphasizes that he names Bennett as a defendant because Bennett is the "overseer" of the facility and because everyone "reports to him."  [doc. # 19, p. 1].  He emphasizes that he names Wyles as a defendant because Wyles is "the warden" and because his "job is to ensure the safety of staff and inmates."  *Id.*  *See Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987) ("[M]isconduct of Sheriff Belt's employees cannot be imputed to the sheriff individually . . . ."); *Sanchez v. Moore*, 2021 WL 5913305, at *1 (5th Cir. Dec. 14, 2021) ("His conclusory assertions that Sifuentes was liable in his role as a supervisor because he did not get involved with the law library policies or the issuance of a medical pass do not establish an affirmative participation in the denial of his rights or the implementation of unconstitutional policies by Sifuentes.").  As above, vicarious liability does not apply to Section claims.  *Pierce*, 37 F.3d at 1150.

For claims of failure to promulgate policy, a "plaintiff ordinarily must show [a] pattern of similar constitutional violations, because without notice of prior constitutional violations, a supervisor can hardly be said to have acted deliberately indifferent."  *Grant v. LeBlanc*, 2022 WL 301546, at *5 (5th Cir. Feb. 1, 2022).  Plaintiff here does not allege a pattern of similar constitutional violations.  He does not, for example, describe or elaborate on others' similar experiences.[8]  *See Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)

---

[8] For conduct to be sufficiently widespread, it must have "occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct."  *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984), *on reh'g,* 739 F.2d 993 (5th Cir. 1984).  The pattern requires "similarity and specificity; '[p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question.'"  *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (*quoting Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 383 (5th Cir. 2005)).  "A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'"  *Id.* (*quoting McConney v. City of Houston,* 863 F.2d 1180, 1184 (5th Cir. 1989)).

11

(observing that a description of a policy or custom cannot be conclusory and finding the following conclusory: allegations that a police department disregarded the rights of other African American citizens); *Clark v. Thompson*, 850 F. App'x 203, 207 (5th Cir. 2021) ("'I was treated unprofessionally' plus 'eighty-two generic complaints' does not equal facts that plausibly show a single comparable incident that would support an inference of a specific custom of violating constitutional rights.").

Plaintiff also does not allege that Bennett or Wyles implemented an explicit unconstitutional policy that deprived him of constitutionally adequate medical care. *See Alderson*, 848 F.3d at 421.

The Court should dismiss these claims.

### C. Changing or Stopping Medication

Plaintiff claims in his initial form pleading that his mental health medication was changed. [doc. # 9, p. 3]. In his amended pleading, he alleges, "I have been taken off my mental meds without seeing a psychiatrist . . . ." [doc. # 19, p. 2]. Plaintiff, however, does not specify who changed or stopped his medication. Accordingly, the Court should dismiss this claim.

### <u>Recommendation</u>

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Demond Isacc Purvis's claims be **DISMISSED WITH PREJUDICE** as legally frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or

response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 7th day of May, 2026.

_____

Kayla Dye McClusky
United States Magistrate Judge

13